UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Patrick Uke,                                         Civ. No. 17-1316 (PAM/SER)

              Plaintiff,

v.                                                   **MEMORANDUM AND ORDER**

United States of America,

              Defendant.

This matter was tried to the Court on September 18, 2018. At issue is Plaintiff's claim that the United States Postal Service ("USPS") is liable under the Federal Tort Claims Act ("FTCA") for injuries Plaintiff suffered at a postal facility. For the following reasons, the Court grants Plaintiff judgment on his claim.

**BACKGROUND**

On December 30, 2013, Plaintiff Patrick Uke walked from his law office to the Powderhorn Post Office in Minneapolis, Minnesota. As he approached the door of the Post Office, he slipped and fell, seriously injuring his ankle. He was transported by ambulance to Hennepin County Medical Center, where he was diagnosed with a trimalleolar fracture of his ankle. He has undergone two surgeries and alleges that he still experiences pain in the ankle so that he cannot perform all the physical tasks he performed before his accident.

Uke brought an administrative claim against the USPS in November 2015. The USPS denied the claim, and this lawsuit followed.

**DISCUSSION**

The FTCA operates to waive the federal government's sovereign immunity for certain tort claims, so that the United States is "liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813 (1976). As relevant here, the FTCA waives sovereign immunity for "personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b)(1).

**A.     Negligence**

Under Minnesota law, a possessor of land is not liable to individuals who come on the land and are injured by a known or obvious danger, "unless the possessor should anticipate the harm despite such knowledge or obviousness." Adee v. Evanson, 281 N.W.2d 177, 179 (Minn. 1979) (quoting Restatement (Second) of Torts § 343A(1)). "Thus, a landowner has a continuing duty to protect an entrant 'even for obvious dangers . . . if harm to an [entrant] should be anticipated despite the obviousness of the danger.'" Godbout v. City of Cloquet, No. C3-97-1345, 1998 WL 51472, at *1 (Minn. Ct. App. Feb. 10, 1998) (quoting Baber v. Dill, 531 N.W.2d 493, 496 (Minn. 1995)).

The evidence at trial established that the USPS knew that the sidewalk on which Uke slipped was hazardous in the winter. Water accumulated on the sidewalk under an extension of the property's roof, which had leaked for years. And despite the USPS's contention that the property's landlord bears responsibility for the hazardous condition, the

evidence establishes that snow removal was the USPS's responsibility.  (Ex. 16.)  The Court concludes that the USPS should have anticipated the harm given its knowledge that ice was prone to build up on the sidewalk.  Moreover, there was sufficient evidence proffered to conclude that the ice was not open and obvious, because of the light snow that fell throughout the day of Uke's accident.  "The test is not whether the injured party actually saw the danger, but whether it was in fact visible."  Munoz v. Applebaum's Food Market, Inc., 196 N.W.2d 921, 922 (Minn. 1972).  Uke has met his burden to establish the USPS's negligence here, and that this negligence caused his injury.

**B. Damages**

There is no dispute that Uke's past medical bills total $54,075.71.  The parties dispute only the extent of Uke's damages for pain and suffering and future medical expenses.

The parties presented conflicting evidence about the extent of Uke's pain and disability because of the accident.  The question of his future impairment is made more complex by the fact that, approximately a year after the accident, Uke was diagnosed with ankylosing spondylitis (AKS), which his orthopedic surgeon described as a "genetic condition that creates autofusion of the spine and a progressive forward-leaning posture."  (Mueller Dep. at 13.)  There is no evidence that Uke's AKS diagnosis was in any way related to his fall, nor that the AKS could have been caused by his fall.  Thus, although both Uke and Linda Graham, Uke's lifecare expert, conflated the symptoms and problems related to Uke's ankle injury with the symptoms and problems related to Uke's AKS, the

3

two are distinct and the USPS is not responsible for any of Uke's medical expenses or physical issues caused by his AKS.

### 1. Pain and suffering

There is no serious dispute that Uke's injury was extremely painful, that it caused him severe pain for many months, that he continues to suffer from at least intermittent pain or discomfort, and that his pain or discomfort may be permanent. "There is no precise or exact measuring stick for calculating general damages for pain and suffering." Taken Alive v. Litzau, 551 F.2d 196, 198 (8th Cir. 1977). Moreover, reference to other awards are "not particularly helpful" and may even constitute an abuse of discretion. McCabe v. Parker, 608 F.3d 1068, 1080 (8th Cir. 2010) (quotation omitted). Rather, each case must be judged on its own facts.

In the Court's view, Uke is due compensation for the pain he has suffered and will continue to suffer. The Court awards him $100,000 for past and future pain and suffering.

### 2. Future medical expenses

Linda Graham testified that Uke will require extensive support services, including outdoor services such as lawn-mowing, snow-shoveling, and raking. In addition, she testified that Uke will require adaptive equipment such as a recliner chair, a shower bench, and possibly a wheelchair or scooter. She opined that Uke requires a membership at a gym and estimated his future healthcare costs to be between $1,000 and $3,000 per year. In total, Ms. Graham testified that Uke's future medical expenses, including adaptive equipment, home services, medical care, medicine, and other necessities, are $212,895.

But most of Ms. Graham's opinions are not supported by the medical evidence. For example, no doctor has recommended that Uke use a wheelchair, or that he requires a special bed or recliner chair. No physician has limited his physical activities or found him to be so disabled that he cannot perform routine maintenance tasks such as mowing the lawn or raking leaves. (See Mueller Dep. at 44 (testifying that Uke does not need help around the house); Coetzee Dep. at 21-22 (testifying that Uke should be able to mow grass, rake leaves, and shovel snow).) And there is no medical evidence to support future healthcare costs of between $1,000 and $3,000 per year. Indeed, there is no evidence that Uke has seen any medical provider for his ankle since 2016, other than the independent medical examination performed in anticipation of this trial.

The Court credits Uke's statements that he sometimes requires a cane, and that certain adaptive equipment such as shoes or a specialized bed have helped his pain and allowed him to ambulate more normally. The value of such equipment, however, is far lower than the amount Graham estimated. The evidence establishes that Uke's future medical costs will be no more than $15,000 in today's dollars, and the Court therefore awards Uke that amount.

**CONCLUSION**

Having found the USPS negligent and liable to Uke under the FTCA, **IT IS HEREBY ORDERED that** Uke is entitled to judgment against the United States in the

amount of $54,075.71 for past medical bills, $100,000 for pain and suffering, and $15,000 for future medical expenses, for a total of $169,075.71.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 4, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge